KENNEDY, JENNIK & MURRAY, P.C.
*Attorneys for Petitioners*
113 University Place, 7th Floor
New York, NY 10003
Tel. (212) 358-1500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN THE MATTER OF ARBITRATION BETWEEN:

METAL LATHERS LOCAL 46 BENEFIT FUNDS and
LOCAL 46 METALLIC LATHERS UNION AND
REINFORCING IRONWORKERS,

Petitioners,

-and-

IRON LADY ENTERPRISES, INC., DIANNA
MONTAGUE, and LELAND HARDY,

Respondents.

---

**PETITION TO CONFIRM
ARBITRATION AWARD
AND
SUPPORTING
MEMORANDUM OF LAW**

**PETITION OF METAL LATHERS LOCAL 46 BENEFIT FUNDS AND LOCAL 46
METALLIC LATHERS UNION AND REINFORCING IRONWORKERS
TO CONFIRM ARBITRATION AWARD AND
SUPPORTING MEMORANDUM OF LAW**

Petitioners, Metal Lathers Local 46 Benefit Funds ("Local 46 Funds") and Local 46

Metallic Lathers Union and Reinforcing Ironworkers ("Local 46"), petition this Court to confirm

the Opinion and Default Award of Arbitrator entered by Arbitrator Roger Maher, dated

September 28, 2017, and states:

<u>**JURISDICTION AND PARTIES**</u>

1.      This is a petition, pursuant to 9 U.S.C. §§ 6 and 9, and § 301 of the Labor

Management Relations Act ("LMRA" or "§ 301"), 29 U.S.C. § 185, to confirm the September

28, 2017 Opinion and Default Award of Arbitrator ("Award") of Arbitrator Roger Maher. A

copy of the Award is attached as Exhibit ("Ex.") A. This Court has jurisdiction pursuant to §301.

2.      The Local 46 Funds are jointly administered employee benefit trust funds, composed of equal representation by Trustees from labor and employers. The Local 46 Funds receive and administer contribution payments from various contractors who are obligated to make such contributions pursuant to collective bargaining agreements with Local 46. The Local 46 Funds are administered at 61-02 32nd Avenue, Woodside, NY 11377 and at 1322 Third Avenue, New York, NY 10021, where the Trustees hold meetings.

3.      Local 46 is a labor organization representing employees in or around New York who work in the construction industry and maintains its principal place of business at 1322 Third Avenue, New York, NY 10021.

4.      Respondent Iron Lady Enterprises, Inc. ("Iron Lady") is an employer in the construction industry, with business addresses at 1943 Poplar Street, Philadelphia, PA 19130; P.O. Box 34737, Philadelphia, PA 19101; and College Station Office, 217 West 140th Street, Unit #932, New York, NY 10030.

5.      Respondent Dianna Montague is the president of Iron Lady, with business addresses at 1943 Poplar Street, Philadelphia, PA 19130 and P.O. Box 34737, Philadelphia, PA 19101.

6.      Respondent Leland Hardy is the vice-president of Iron Lady, with business addresses at 1943 Poplar Street, Philadelphia, PA 19130; P.O. Box 34737, Philadelphia, PA 19101; and College Station Office, 217 West 140th Street, Unit #932, New York, NY 10030.

## FACTUAL BACKGROUND

### The Collective Bargaining Agreement and the Trust Agreements

7.      At all times material hereto, a collective bargaining agreement ("CBA") was in effect between Local 46 and Iron Lady. The CBA required Iron Lady to remit contributions to

the Local 46 Funds on behalf of each employee covered by the CBA. The CBA is attached as

Exhibit B. The CBA became effective January 1, 2015, for a three-year term.

8.      Article X of the CBA provides for arbitration of disputes concerning the terms of

the agreement, first through a Trade Board—consisting of a panel which includes union and

employer representatives—and second, failing a decision by the Trade Board, submission of the

dispute to an impartial arbitrator. Decisions rendered by the Trade Board (or an arbitrator if the

matter must proceed accordingly) "shall be final and binding on the parties hereto." (*See* Ex. B,

Art. X.)

9.      Article XII, Sections 1(h) and 8 provide that employers who are signatories to the

CBA agree to be bound by the Agreements and Declarations of Trust establishing the Local 46

Funds. Article XII, Section 8 provides that employers shall be bound to the Agreements and

Declarations of Trust "as such Agreements and Declarations of Trust may now exist or may be

hereafter amended." (*See* Ex. B, Art. XII, Sections 1(h) and 8.)

10.     The Reaffirmation and Restatement of the Agreement and Declaration of Trust

for the Local 46 Funds (the "Trust Agreements") provides that:

> The Board [of Trustees of the Local 46 Funds] also has the right, in its sole and
> absolute discretion, to determine whether to initiate arbitration proceedings
> against a delinquent Employer (in lieu of pursuing any other remedies or legal
> action) and to designate the specific issue(s) and delinquency period(s) that are
> the subject of (and are to be decided during) any such arbitration proceeding …
> Any arbitration proceeding initiated by the Board to collect delinquent
> contributions owed to the Fund will be heard by either Roger Maher or Howard
> Edelman.

(*See, e.g.*, the Reaffirmation and Restatement of the Agreement and Declaration of Trust of the

Metal Lathers' Local 46 Pension Fund, Article IX, Section 9.9, at pp. 36-37, attached as Exhibit

C.)

11.     By the terms of the CBA and the Trust Agreements, therefore, arbitration

regarding an employer's delinquent contributions to the Local 46 Funds are not submitted to the Trade Board, but instead are heard before Arbitrators Roger Maher or Howard Edelman.

12.    Article XII, Section 1 of the CBA also provides that, employers shall contribute to the Local 46 Funds at the stipulated hourly rate attributable to each of the individual Funds.

13.    Article XII, Sections 2, 3, and 11 of the CBA establish that Iron Lady must remit weekly contributions to the Local 46 Funds for every hour worked by employees performing work covered under the CBA.

14.    Sections 4 and 11 of Article XII provide that any employer who is delinquent in remitting the contributions to the Local 46 Funds "shall pay twelve percent (12%) on all late payments per annum." (*See* Ex. B, Art. XII, Sections 4 and 11.)

15.    The CBA provides, further, that in any action, including arbitration, to enforce payment of any delinquent contributions to the Local 46 Funds, the Funds shall be entitled to:

      a.  the unpaid contributions;
      b.  interest at the rate of twelve percent (12%) on the unpaid contributions;
      c.  an amount equal or greater of—
         i.  interest on the unpaid contributions, or
        ii.  liquidated damages provided for under the plan in an amount not in excess of twenty percent (20%)
      d.  reasonable attorney's fees and costs of the action, to be paid by the respondent or defendant; and
      e.  such other legal or equitable relief as the arbitrator or the court deems appropriate.

(*See* Ex. B, Art. XII, Sec. 11.)

16.    In addition to requiring the contributions to the Local 46 Funds, the CBA—at Section 9 of Article XII, and at Article XIII, Section 7—provides that:

[T]he Employer agrees that its corporate officers, partners or principals in its business will be personally responsible for such contributions and they will become Fiduciaries to the extent of such personal responsibility, if such delinquency continues, and if the Fringe Benefit Funds are required to initiate litigation to recover any delinquency.

4

(*See* Ex. B, Art. XII, Sec. 9 and Art. XIII, Sec. 7.)

17.     By the terms of the CBA, therefore, Iron Lady's president, Dianna Montague, and the company's vice president, Leland Hardy, both corporate officers of Iron Lady, are personally liable for contributions due to the Local 46 Funds.

**The Dispute**

18.     On June 6 and June 23, 2017, Richard Bamberg, of Fitzsimmons Abrams, LLP (accountants for the Local 46 Funds) contacted Iron Lady's president, Dianna Montague, seeking dates for an audit of Iron Lady's payroll records. Montague did not reply to either communication from Bamberg.

19.     By letter from counsel dated June 20, 2017, the Local 46 Funds, contacted Iron Lady regarding delinquent contributions for an employee named Jose Rodriguez. The letter notified Iron Lady that the company had failed to remit contributions due on behalf of Mr. Rodriguez for over 200 hours of covered work and was in arrears for the amount due, plus 12% interest per year.

20.     By letter dated July 17, 2017, Bamberg sent Iron Lady a final notice requesting that the company contact Fitzsimmons Abrams to schedule an audit for the period of January 1, 2015 to June 30, 2017.

21.     When Iron Lady failed to contact Fitzsimmons Abrams for an audit appointment, by letter dated August 25, 2017, the Local 46 Funds sent a letter to Arbitrator Roger Maher, requesting an arbitration hearing in which the Funds sought an order compelling Iron Lady to submit to an audit and make the delinquent contributions due on behalf of Jose Rodriguez. Copies of the August 25 letter were sent to Iron Lady and to Dianna Montague and Leland Hardy. The August 25 letter requesting arbitration—along with the June 20 and July 17, 2017 letters to Iron Lady that were included with it—are attached as Exhibit D.

22.     An arbitration hearing was set and on September 7, 2017, Arbitrator Roger Maher sent a Notice of Hearing to the parties for a September 22, 2017 hearing. The Notice of Hearing is attached as Exhibit E.

**Arbitration**

23.     An arbitration hearing was held as scheduled on September 22, 2017 at the offices of Kennedy, Jennik & Murray, P.C. On that day, the Local 46 Funds appeared before Arbitrator Roger Maher, but no representatives for Iron Lady appeared at the hearing and there was no testimony from Iron Lady regarding the dispute.

24.     At the September 22, 2017 arbitration hearing, the Local 46 Funds offered uncontested documentation in support of its contentions regarding the requested audit appointment and the demand for payment of delinquent contributions for Jose Rodriguez.

25.     On September 25, 2017, counsel for the Local 46 Funds submitted attorney time records to Arbitrator Maher and a total for attorneys' fees to be included in the assessment of amounts due from Iron Lady in connection with the dispute and arbitration.

26.     On September 28, 2017, Arbitrator Maher issued an Opinion and Default Award (the "Award"), which set forth that:

> Upon the substantial and credible evidence of the case as a whole I find the Respondent-Employer, Iron Lady Enterprises, Inc., Dianna Montague, President and Leland Hardy, Vice President are delinquent in Fringe Benefit monies due under its written agreement, on behalf of Jose William Rodriguez and is also obligated to pay delinquency assessment and interest on its delinquency, plus an Attorney's Fee to the Petitioners and the Fee of undersigned Arbitrator and Court Costs all in accordance with the terms and provisions of the Collective Bargaining Agreement in the following amounts:
>
> > Principal – $ 11,810.10
> > Total Interest – $ 1,364.86
> > Liquidated Damages – $ 2,362.02
> > Court Costs – $ 400.00
> > Attorney's Fee – $ 6,060.00

Arbitrator's Fee – $ 2,200.00
TOTAL $ 24,196.98

(*See* Ex. A at pp. 2-3.)

27.     The Award also provided that:

The Arbitrator orders the Company and its two cited principals to permit an audit
by Funds auditors covering the period 1/01/2015 to date encompassing access to
all books and records of the Company, including but not limited to: business
income tax returns, general ledger, book of original entry, subsidiary ledgers,
payroll journals and other related payroll records, bank statements and cancelled
checks, W-2 and W-3 forms, 940, 941, 1099 forms, State Employment records,
remittance reports as well as the same books of any affiliate, subsidiary, alter ego
or other related company doing covered work under Local 46's CBA.

(*Id.* at p. 3.)

28.     Arbitrator Maher sent copies of the Award to Iron Lady via Dianna Montague and

Leland Hardy at the Philadelphia address used by the Local 46 Funds to communicate with Iron

Lady. (*See* Ex. A at p. 4.)

**Relief Sought**

29.     The Union seeks an order confirming the Award and directing Respondents Iron

Lady, Dianna Montague, and Leland Hardy to comply with the terms of the Award, to wit:

a.     Respondents to pay the Local 46 Funds a total of $24,196.98, which includes

payments that Respondents owe the Local Funds for delinquent contributions

on behalf of Jose Rodriguez, interest, liquidated damages and costs and fees,

as itemized below:

Principal – $ 11,810.10
Total Interest – $ 1,364.86
Liquidated Damages – $ 2,362.02
Court Costs – $ 400.00
Attorney's Fee – $ 6,060.00
Arbitrator's Fee – $ 2,200.00
TOTAL $ 24,196.98

b.     Respondents shall permit an audit by the auditors for the Local 46 Funds. The

7

audit will cover the period January 1, 2015 to the date of the Award, and shall
encompass access to all of Iron Lady's books and records, including but not
limited to: business income tax returns, general ledger, book of original entry,
subsidiary ledgers, payroll journals and other related payroll records, bank
statements and cancelled checks, W-2 and W-3 forms, 940, 941, 1099 forms,
State Employment records, remittance reports as well as the same books of
any affiliate, subsidiary, alter ego or other related company doing covered
work under the collective bargaining agreement with Local 46.

30.    As of the date of this petition, the Respondents have failed to remit any of the
payments ordered in the Award.

31.    As of the date of this petition, the Respondents have not complied with the order
to permit an audit of the books and records detailed above.

32.    Respondents' failure to pay the total amount set forth in the Award and its failure
to comply with the order to permit an audit violates the Award.

## MEMORANDUM OF LAW

### I.    The Arbitration Award Must Be Summarily Confirmed Pursuant to 9 U.S.C. § 9 and 29 U.S.C. § 185

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater New York v. The Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) ("*Parker Meridien*"); *see also Kallen v. District 1199, Nat'l Union of Hosp. Care Employees*, 574 F.2d 723, 725 (2d Cir. 1978) (noting that "federal courts indisputably have jurisdiction under section 301 to <u>enforce</u> a labor arbitration award") (emphasis in original).

The Federal Arbitration Act ("FAA") sets forth the procedure for confirming an arbitration award. 9 U.S.C. §§ 1-16. The party seeking confirmation of the award begins by filing a petition to confirm the award. 9 U.S.C. § 6. The petition is to include a copy of the arbitration agreement, the arbitrator's award, and supporting affidavits or other papers used to support the application. 9 U.S.C. § 13. The adverse party must be served with copies of the petition and supporting papers. 9 U.S.C. § 9.

To effectuate the federal policy favoring arbitration, confirmation proceedings under 9 U.S.C. § 9 are extremely narrow inquiries with limited judicial review of the arbitration process and the award. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Id.* Confirmation proceedings, therefore, are intended to be summary in nature. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The confirmation process does not serve as an

opportunity to re-litigate the issues resolved in the arbitration award. *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960).

The FAA presumes that arbitration awards will be confirmed. Section 9 of the FAA expressly provides that a motion to confirm an arbitration award <u>must</u> be granted unless the award has been vacated, modified, or corrected under Section 10 or 11 of the FAA. *D.H. Blair*, 462 F.3d at 110 ("Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' … and the court 'must grant' the award 'unless the award is vacated, modified or corrected.'") (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984) and 9 U.S.C. § 9); *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) ("Absent a statutory basis for modification or vacatur, the district court's task was to confirm the arbitrator's final award as mandated by section 9 of the Act."); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 707 (2d Cir. 1985) ("The Arbitration Act is clear that a motion to confirm must be granted 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'") (quoting 9 U.S.C. § 9).

Thus as the Award has not been vacated, modified, or corrected pursuant to 9 U.S.C. §§ 10 and 11, and the Award is in all respects a valid and conforming award according to the parties' agreement to arbitrate, the Award must be confirmed.

## II.    The Award Must Be Summarily Confirmed Because the Parties Agreed That Arbitration Decisions Must Be Final and Binding

The parties to a collective bargaining agreement that provides for arbitration may consent to judicial confirmation through the language of the arbitration agreement if the agreement declares that arbitration awards shall be final and binding. *Kallen v. District 1199, Nat'l Union of Hosp. Care Employees*, 574 F.2d 723, 725-26 (2d Cir. 1978); *I/S Stravborg v. Nat'l Metal*

*Converters, Inc.*, 500 F.2d 424, 426-27 (2d Cir. 1974); *Home Insurance Co. v. RHA/Pennsylvania Nursing Homes, Inc.*, 127 F.Supp.2d 482, 485 (S.D.N.Y. 2001) (citing both *Kallen* and *I/S Stravborg*, and noting that, "[a]s a practical matter, <u>parties who agree not only to arbitrate their disputes, but that any award shall be final, intend that any such award may be enforced in the courts</u>") (emphasis added).

Here, Article X of the CBA between Local 46 and Iron Lady provides that arbitration "shall be final and binding on the parties hereto." (*See.* Ex. B, Art. X.) The inclusion of such language indicates that the parties intended that arbitration awards be enforced in the courts.

**III.    Petitioners Are Entitled to Payment of Their Legal Fees and Expenses in Bringing This Petition**

The Petitioners are entitled to payment of their attorneys' fees and costs incurred in bringing this petition. Courts may award attorneys' fees and costs in an action to confirm an arbitration where the Respondent has refused to comply with the arbitration award without justification. *NYC Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const., Inc.*, No. 03 Civ. 5122, 2003 U.S. Dist. LEXIS 21139, at *8 (S.D.N.Y. Nov. 21, 2003) (noting that "because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of arbitration award 'refuses to abide by an arbitrator's decision without justification,'" and awarding attorney's fees <u>where respondent did not appear at arbitration hearing or oppose action to confirm award</u>) (citations omitted); *In the Matter of Arbitration between Soft Drink and Brewery Workers Union Local 812, IBT, AFL-CIO and Ali-Dana Beverages, Inc.*, No. 95 Civ. 8081, 1996 U.S. Dist. LEXIS 10585, at *8 (S.D.N.Y. July 25, 1996) (awarding attorney's fees where defendant "failed to either pay the award or file a motion to vacate or modify"); *Hunt v. Commodity Haulage Corp.*, 647 F.Supp. 797, 799 (E.D.N.Y. 1986)

(finding defendants' resistance to arbitration award was "without justification" where defendants had agreed to binding arbitration under a collective bargaining agreement, then chose <u>not</u> to participate in the arbitration proceedings and did not oppose application for confirmation).

Respondents agreed, pursuant to the CBA and the Local 46 Funds Trust Agreements, to submit disputes to arbitration. Respondents never raised any objection to the request for arbitration and subsequently failed to appear at the September 22, 2017 arbitration hearing. Respondents have not complied in any way with Arbitrator Maher's September 28, 2017 arbitration award. Moreover, Respondents have not moved the Court to vacate or modify the arbitration award. Respondents' failure to comply with the Award is without justification and an award of Petitioners' attorneys' fees in bringing this application is proper.

## CONCLUSION

For all of the foregoing reasons, the Court should confirm Arbitrator Maher's Opinion and Default Award in this matter.

WHERFORE, Petitioners request an Order:

A. Confirming the Award issued by Arbitrator Roger Maher on September 28, 2017; and

B. Awarding Petitioners the costs incurred in bringing this action; and

C. Granting Petitioners such other and further relief as the Court deems just and proper.

Dated: New York, NY
       October 25, 2017

Respectfully submitted,
Kennedy, Jennik & Murray, P.C.,
*Attorneys for Petitioner*

/s/ Serge Ambroise
113 University Place, 7th Floor
New York, NY 10003
(212) 358-1500 (Tel.)
(212) 358-0207 (Fax)
sambroise@kjmlabor.com
